UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LASHARDA PEOPLES,
mother and guardian of C.R.,

    Plaintiff,                      CASE NO. 05-CV-10316

v.                                     DISTRICT JUDGE THOMAS LUDINGTON
                                     MAGISTRATE JUDGE CHARLES BINDER

SAGINAW PUBLIC SCHOOLS,
CARLO ROBINSON, CHERYL
HATTON, and JOHN DOE,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS SAGINAW PUBLIC SCHOOLS' AND HATTON'S
MOTION FOR SUMMARY JUDGMENT**
(Dkt. 16)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **GRANTED** and that all claims against Defendant Saginaw Public Schools and Defendant Cheryl Hatton be dismissed.

## II.    REPORT

### A.    Introduction

By order of U.S. District Judge David M. Lawson, this civil rights case was referred to the undersigned Magistrate Judge for general case management on December 19, 2005. (Dkt. 5.) Pursuant to Administrative Order 06-AO-027, this case was reassigned to U.S. District Judge Thomas L. Ludington on September 12, 2006. (Dkt. 15.) Defendants filed the instant motion on

September 21, 2006. Plaintiff filed a response (Dkt. 18) and oral argument was held on October 26, 2006. After review of the documents and having been further informed during oral argument, I conclude that, pursuant to E.D. Mich. LR 7.1(e)(2), the motion is ready for report and recommendation.

### 1.     Background Facts & Record Evidence[1]

Plaintiff's complaint was originally filed in the Saginaw County Circuit Court but was removed to this Court on December 2, 2005. The complaint asserts four counts: (I) intentional tort, (II) gross negligence, (III) 42 U.S.C. § 1983 – constitutional deprivation by defendants, (IV) 42 U.S.C. § 1983 – constitutional deprivation by Defendant Saginaw Public Schools. (Dkt. 1.)

The complaint alleges that C.R.,[2] a Saginaw Public School student, was assaulted by Defendant Carlo Robinson ("Mr. Robinson"), a Saginaw Public School teacher, on or about October 12, 2005, during the administration of the Michigan Educational Assessment Program ("MEAP") examination at South Middle School in Saginaw, Michigan. (Compl., Dkt. 1 ¶¶ 12-13.) Plaintiff alleges that the "only reason for this assault was that [C.R.] started filling in answers on his test too early." (*Id.* ¶ 13.) There is a pending criminal case against Mr. Robinson based on the events of October 12, 2005, that has not been concluded, at least at the time of Plaintiff's deposition. (Pl.'s Dep., Dkt. 18, Ex. 1 at 85.)

C.R. is a student in the emotionally impaired room where "[m]ost students [exhibit] severe behavior problems." (Robinson Dep., Dkt. 16, Ex. 2 at 31.) In general, students in that classroom need to be "restrained" between five and ten times per year. (*Id.* at 32.) C.R.'s mother, Plaintiff

---

[1] I note that although proper citation requires insertion of "sic" where a quotation is accurate yet grammatically incorrect, I have intentionally not done so for the pragmatic reason that to do so would overwhelm the subject matter of many of the quotations.

[2] Pursuant to Administrative Order 05-AO-025, electronically-filed documents may not contain the name of a minor. Therefore, the minor at issue in this case shall be referred to by his initials, "C.R."

La Sharda Peoples, indicated that she received approximately three calls each day from the school because of issues with C.R. (Pl.'s Dep. at 46.) C.R. takes and has taken a variety of medication for Attention Deficit Hyperactivity Disorder ("ADHD") including Strattera and Concerta. (*Id.* at 50-51.) C.R. had been expelled from school five or six times before the incidents alleged in the complaint. (*Id.* at 83.) Plaintiff acknowledges that C.R. "has a filthy mouth" (*id.* at 87) and is also regularly counseled at the Weslund Guidance Center. (*Id.* at 91-92.) At Weslund, C.R. has been diagnosed with emotional impairments that exhibit themselves as "problem[s] with authority" and "depression." (*Id.* at 91-92.)

C.R. described his difficulty with Mr. Robinson as follows: When Mr. Robinson asked C.R. to do something (such as picking something off the floor that Mr. Robinson had dropped or thrown) and C.R. did not want to do it, C.R. would not do what he was asked, and then Mr. Robinson would approach C.R., yell at him, send him to the office, or call his mother. (C.R. Dep., Dkt. 16, Ex. 1 at 9, 41.) C.R. indicated that his difficulties with Mr. Robinson did not "get physical until the beginning of seventh grade." (*Id.* at 11.)

During his deposition, C.R. described a number of incidents involving Mr Robinson. In one instance, Mr. Robinson approached his desk and "was just standing there for a long time" so C.R. asked him, "Can I help you?" (*Id.* at 12.) C.R. stated that Mr. Robinson responded, "You know what you can help me with? Like stand up all day." (*Id.*) Mr. Robinson then moved C.R.'s desk to the wall so he couldn't sit down, "grabbed" him "right by [his] collar bone, then [] clip[ped]" him such that C.R. hit his head on the floor. (*Id.* at 12, 14, 17.) C.R. got up and "come into his face and be like, 'Why you do? You 're not supposed to put your hands on me.'" (*Id.* at 12.) Plaintiff Peoples adds that Mr. Robinson told her that he had asked C.R. to do something, but "C.R. wasn't complying," so he "was playing" and "clipped him." (Pl.'s Dep. at 36.) Mr.

3

Robinson then called Mr. Wilson, a teacher's aide, in from the hallway because C.R. was "coming towards" Mr. Robinson and C.R. was escorted to the office with Mr. Wilson. (C.R. Dep. at 12, 17.) C.R. states that he was coming toward Mr. Wilson but that he believes Mr. Robinson was "going to make pretend like [he] was trying to attack him." (*Id.* at 17.) Mr. Robinson recalls that he did touch C.R. to wake him up and that C.R. responded by taking a swing at him. (Robinson Dep. at 18-19.)

C.R. also stated that Mr. Robinson hit him in the face with a basketball intentionally one time because Mr. Robinson and Mr. Wilson laughed about it. (C.R. Dep. at 18-19.) Mr. Robinson denies ever hitting C.R. with a basketball. (Robinson Dep. at 17.) Plaintiff Peoples recalls the day when the other children told her Mr. Robinson was "hitting everybody like that with the ball" and that Mr. Robinson told her that C.R. "shouldn't be so hardheaded . . . . [and that] if [he] tells [C.R.] to come on, [he] mean come on." (Pl.'s Dep. at 34-36.)

C.R. also described incidents involving four other students where Mr. Robinson "slapped" them behind the head or hit them in the head. (C.R. Dep. at 19-22.)

C.R. indicated that on the day of the MEAP test, October 12, 2005, Mr. Robinson came over to C.R. and asked him why he had started the test and C.R. responded that Mr. Robinson had told them they could start. (*Id.* at 23.) According to Mr. Robinson, although the other students were properly working on the math portion of the test, when he approached C.R., C.R. was using a section of the test sheet as scratch paper that was clearly marked with instructions that stated "do not write in this area of the test." (Robinson Dep. at 10-11, 28-29.) Mr. Robinson showed C.R. that the instructions indicated he should not be writing on that portion of the test papers, but C.R. continued to write in that area for another three to five minutes, so Mr. Robinson put his hand on C.R.'s hand to stop him from writing. (*Id.* at 11.)

4

C.R. alleges that "[Mr. Robinson] grabbed [his] wrist right here, squeeze it real tight and was like 'Erase it.'" (C.R. Dep. at 23.) Then C.R. "shoved away" Mr. Robinson's "wrist . . . [b]ecause he was squeezing it." (*Id.*) Mr. Robinson instead contends that C.R. took "a swing at [him] with his left hand . . . [so] [he] tripped [C.R.], took him down to the floor and as he held him to the floor . . . told him 'You need to stop.'" (Robinson Dep. at 11.)

According to C.R., "that's when [Mr. Robinson] started choking [him.]" (C.R. Dep. at 23.) C.R. stated that Mr. Robinson's choking was "like you strangling somebody like this squeezing." (*Id.* at 24.) C.R. explained what happened next:

> I tried to scoop him. Like he was standing over me like this, and I was like trying to grab his legs and pick him up. . . . So he wouldn't be keep on choking me, because I couldn't breathe and my face was turning red. . . . And that's when he had picked me up. Like when I tried to do him like that, instead he grabbed me by my legs and then he had slammed me on the desk. And I was like I blacked out. Then when I came back, or whatever, everybody was like, "Ooh, look at his eye. It's bleeding. It's bleeding." And that's when I started getting real mad. And then Mr. Wilson had came in the classroom, had picked me up and took me to the office. And I kept trying to get back to the classroom where he was at, 'cause I was real mad. My eye was bleeding. Blood was getting in my eye, and everything.

(C.R. Dep. at 24-25.)

According to Mr. Robinson, however, he told C.R. to return to his seat to continue with the test but when he let him back up "[C.R.] proceeded to swing at [Mr. Robinson] again." (Robinson Dep. at 11.) Mr. Robinson concedes that he "actually turned [C.R.] around and . . . grabbed [C.R.] by the seat of his pants, he was wearing saggy pants at the time and he was tussling with [Mr. Robinson] and stuff [a]nd [Mr. Robinson] had to escort him out of the classroom." (*Id.*) During that time, Mr. Robinson did lift C.R. "a couple inches off the ground" at which point C.R. stopped tussling so Mr. Robinson could "get behind him . . . [and] escort[] him out." (*Id.* at 43.)

5

Although Mr. Robinson was initially reprimanded in a letter from the principal regarding the above incident (and placed on leave for three days), after the Saginaw Public Schools investigated this incident, they determined that he acted appropriately under the circumstances and exonerated him. (Robinson Dep. at 9, 16.) Mr. Robinson has never been reprimanded under any other circumstances. (*Id.* at 8-9.)

Cheryl Hatton, Director of Special Education, stated that she did not have any knowledge of previous assaults by Mr. Robinson. (Hatton Dep., Dkt. 16, Ex. 3 at 16.)

**2.    Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is

[more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**B.    Law & Analysis**

**1.    42 U.S.C. § 1983 (Count IV) - Defendant Saginaw Public Schools**

Plaintiff avers that Defendant Saginaw Public Schools "by custom, policy and/or practice, failed to properly train, evaluate, supervise, investigate, review and/or discipline its employees, agents and volunteers, and condoned the assaultive behavior, and thereby subjected C.R. to the deprivation of his rights, privileges and immunities secured by the United States Constitution, including the liberty interest in freedom from bodily injury, without equal protection and due process of law." (Compl., Dkt. 1 ¶ 35.)

Since Plaintiff's claim is not based on a lack of procedural protections but rather on the injury inflicted, Plaintiff's claim sounds in substantive due process. Substantive due process rights are violated only when "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987). *See also Lillard v. Shelby County Bd. Of Ed.*, 76 F.3d 716, 725 (6th Cir. 1996). Since Defendant Robinson has not joined in this motion, however, resolution of this constitutional question is not required.[3] I therefore will assume, *arguendo*, that Plaintiff's substantive due process rights were violated by Mr. Robinson.[4]

"A local governmental entity may be held liable under 42 U.S.C. § 1983 for violations of federal law committed pursuant to a governmental 'policy or custom.'" *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999) (quoting *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Defendant Saginaw Public Schools cannot be held liable under the theory of *respondeat superior*, but only where the policy or custom of the governmental entity is proven. *Monell, supra*. This policy or custom may arise where an entity tacitly authorizes or approves conduct by its agents by failing to train or supervise them if certain criteria are met.

---

[3] Plaintiff may have a difficult time meeting this standard since our circuit has stated that "it is simply inconceivable that a single slap could shock the conscience." *Lillard*, 76 F.3d at 726.

[4] To the extent that Plaintiff alleges a violation of equal protection, that claim must fail for failure to provide any evidence that Plaintiff was treated differently because of his race, gender or any other protected criteria. In order to prove an equal protection violation, Plaintiff must show that Defendant Saginaw Public Schools "treated C.R. differently 'because of, not merely in spite of, the harmful [disparate] effect that such treatment would have.'" *Soper*, 195 F.3d at 852 (quoting *Doe v. Londonderry School District*, 970 F.Supp. 64, 77 (D.N.H. 1997)).

8

In order to succeed on a failure to train or supervise claim against the school district, Plaintiff must further prove that: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992). With regard to the second element, the Sixth Circuit has held that a school district is deliberately indifferent to potential abuse by teachers where (1) the school district failed "to provide adequate training in light of foreseeable consequences that could result from lack of instruction," and (2) the school district "fails to act in response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). *See also Ellis v. Cleveland Municipal School District*, 455 F.3d 690, 700-01 (6th Cir. 2006).

Plaintiff alleges that the conflicting testimony between Defendant Hatton and Plaintiff's witnesses creates a genuine issue of material fact that precludes summary judgment against Defendant Saginaw Public Schools. Plaintiff's witnesses include herself, C.R., Quamay Henne and Lashon Holem. Both Quamay Henne's and Lashon Holem's "typed statements"[5] address only the incident that occurred between Defendant Robinson and C.R. on October 12, 2005, during the administration of the MEAP test. They do not allege that Defendant Hatton or any other school official was aware of any previous assaultive or excessive behavior on the part of Defendant Robinson. Therefore, even if admissible, these statements do nothing to assist Plaintiff in her claim that the school system was aware of previous abuse and failed to protect Plaintiff.

---

[5] I note that these statements are not sworn statements or affidavits that would be admissible evidence; however, they could be reiterated in an admissible form. *See Celotex*, 477 U.S. at 324; *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999) (evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial).

9

Plaintiff and C.R. both stated in their depositions that Mr. Robinson had "slapped" other students behind the head or hit them in the head. (C.R. Dep. at 19-22 (four students); Pl.'s Dep. at 29, 36 (one student; C.R.).) Plaintiff contends that she told Ms. Roby, an assistant principal, about this October clipping incident later that day when Plaintiff saw her at the Team One Credit Union. (Dkt. 18, Ex. 1 at 40.) Plaintiff further contends that she also told Ms. Roby about the one incident she described where Mr. Robinson "smacked [a girl named Justine or Jazean] up side her head" after the student "kept being disrespectful and bad," "kept messing with a Caucasian kid," and would not sit down as requested by Mr. Robinson. (Pl.'s Dep. at 29-31, 53-54, 96.) Plaintiff also told Miss Dawkins[6] about having seen Mr. Robinson "slap the kids up side the head." (Pl.'s Dep. at 49.) Plaintiff Peoples also recalls that she "went nuts on all of them . . . cussing them out . . . [because she] told them to do something about this teacher . . . [and she] called Miss Roby a bitch because [she] said [she] 'just told [Ms. Roby] the other day that he had did that to [her] son about his head.'" (Pl.'s Dep. at 56-57.)

In *Ellis, supra*, a substitute teacher "grabbed" a student, "slammed her head against the blackboard," "threw her on the ground and choked her for approximately one minute." *Ellis*, 455 F.3d at 700. The plaintiff "suffered petechia and contusions on her neck." *Id.* In *Ellis*, as in the instant case, the plaintiff did not argue that it was foreseeable that substitute teachers would assault students if not trained or supervised properly, but instead contended that the school district failed to properly act in light of the notice it had of prior abuse by substitute teachers. *Id.* at 701. The school district in *Ellis* had received "ten incident reports of prior abuse" by substitute teachers over a two-year period. *Id.* The court noted that two of the incidents were similar in severity to that alleged in the *Ellis* case, i.e., pushing a student's face into the chalkboard and making him hold his

---

[6]Miss Dawkins' title or role in the school was not elucidated during the deposition.

10

arms out as well as kicking and choking a student, and the other eight incidents involved more mild punishments such as grabbing a student by the arm and smashing his brother's crayon box. *Id.* The Sixth Circuit held that the plaintiff in *Ellis* had failed to present "any evidence that two incidents of substitute-teacher abuse is more than what the normal number of incidents would be, [so] she cannot show that the School District had notice of a problem requiring additional training or supervision. Thus, as a matter of law, her claim of failure to train or supervise fails because a reasonable jury could not find the School District deliberately indifferent." *Id.*

I suggest there is even less evidence in the instant case. Here, there were no "incident reports" of alleged abuse by Mr. Robinson; rather, viewing the evidence most favorably to Plaintiff, the assistant principal, Ms. Roby, was informally made aware of two incidents where Mr. Robinson "clipped" or "smacked" students on the head (Justine or Jazean and C.R.). (Dkt. 18, Ex. 1 at 40); (Dkt. 18, Ex. 1, Pl.'s Dep. at 29-31, 53-54, 96.) In addition, a Miss Dawkins was told by Plaintiff that Mr. Robinson would "slap the kids up side the head." (Pl.'s Dep. at 49.)

I suggest that this informal mention of problems with Mr. Robinson to two school staff members without submission of a more formal complaint to either the principal or the school board did not provide notice to the school district so as to give rise to a disputed issue of fact as to whether there was deliberate indifference. *Cf. Hart v. Print Valley Local School District*, No. C2-01-004, 2002 WL 31951264 (S.D. Ohio 2002) (question of fact on deliberate indifference present under § 1983 and Title IX where four instances of teacher misconduct had been reported to the police, investigated, reported to the school district or complaints had been made to the school administration and the school Board, and meetings had been conducted between parents and the principal); *Stoneking v. Bradford Area School Dist.*, 882 F.3d 720, 725 (3d Cir. 1989) (deliberate indifference found where school officials had received at least five complaints about sexual

11

assaults on female students, complaints were kept secret, teacher evaluations were not affected, and parents were discouraged from pursuing complaints any further).

Finally, there is no evidence that Mr. Robinson's "misconduct had been perpetrated pursuant to an official policy or with the tacit authorization of his supervisors, essential elements of § 1983 liability." *Henderson v. Walled Lake Consolidated Schools*, 469 F.3d 479, 492 (6th Cir. 2006) (no evidence of tacit authorization where no "administration official had actual notice of widespread misconduct" of teacher and where the only complaint lodged was made by one student). *See also Lillard*, 76 F.3d at 728 (granting summary judgment for defendants where there was "no evidence that any of the supervisory defendants either encouraged [the teacher's] behavior, or directly participated in it [and] [t]he only information any of these defendants had was of isolated and apparently unrelated incidents of bad behavior by [the teacher]").

Even if the informal complaints to staff members about "clippings" could be considered notice to the school district,[7] I suggest the district would not have been on notice of conduct that clearly violated constitutional rights since the conduct here falls short of the kicking, choking, slamming, and throwing alleged in *Ellis, supra*, or sexual assaults alleged in *Stoneking, supra.*

I therefore suggest that Plaintiff has failed to come forward with evidence sufficient to give rise to a disputed issue of fact with regard to whether Defendant Saginaw Public Schools was deliberately indifferent and thus further suggest that the defendant school district is entitled to summary judgment.

---

[7]The other incidents of alleged "clipping" or "slapping" were not reported to any school authority and could not form the basis of any notice to Defendant Saginaw Public Schools. (C.R. Dep. at 19-22 (four students); Pl.'s Dep. at 29, 36 (C.R.).)

12

### 2.     42 U.S.C. § 1983 (Count III) - Defendant Hatton

Plaintiff avers that Defendant Hatton, while "acting under color of statute of the State of Michigan, [] subjected C.R. to a deprivation of his rights, privileges and immunities secured by the Constitution and law of the United States and the State of Michigan, including the liberty interest in freedom from bodily injury."  (Dkt. 1 ¶ 30.)  Plaintiff adds that Defendant Hatton "failed to properly train, evaluate[,] supervise, investigate, review and/or discipline its employees . . . and condoned assaultive behavior."  (*Id.* ¶ 31.)  Plaintiff adds that this deprivation was "without equal protection and due process" under the United States Constitution and the Michigan Constitution.  (*Id.* ¶ 31-32.)

Plaintiff's attempt to seek relief under 42 U.S.C. § 1983 based on violations of the Michigan Constitution must fail.  It is axiomatic that a Plaintiff must allege a right secured by the Constitution or laws of the United States and that the deprivation of that right was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).  With regard to the alleged violations of the United States Constitution, "[g]overnmental officials may be held personally liable for damages under § 1983 based upon their actions taken in their individual capacities."  *Soper*, 195 F.3d at 853.  Governmental officials are entitled to qualified immunity unless their "actions violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).  In the qualified immunity analysis,

> [t]he first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is whether the plaintiff has alleged sufficient facts,

13

>and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quotations omitted). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School District of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (holding that although plaintiff's First Amendment rights were violated, individual defendant was entitled to qualified immunity and summary judgment in favor of Defendant school district was proper as to claim based on a failure to train theory)). Furthermore, "[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999). Instead, a "'§ 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Defendant Hatton, the Director of Special Education, stated that she did not have any knowledge of previous assaults by Mr. Robinson. (Hatton Dep., Dkt. 16, Ex. 3 at 16.) This is consistent with the record evidence that only Ms. Roby and Miss Dawkins were told about Mr. Robinson's proclivity to "slap" students on the head. Defendant Hatton's testimony that she had no knowledge of any previous assaultive behavior on the part of Defendant Robinson is uncontradicted.

Since she had no knowledge of any alleged assaultive behavior by Mr. Robinson, I suggest that it would be incongruous to conclude that what she did or failed to do was objectively

unreasonable.[8]  I further suggest that her mere failure to act cannot give rise to liability.  *Bass, supra; Turner, supra.*  Accordingly, I suggest that Plaintiff has not met her burden to show that Defendant Hatton is not protected by immunity and that summary judgment for Defendant Hatton therefore is appropriate with respect to this § 1983 claim.  *Curry, supra; Silberstein, supra*.

### 3. Defendant Saginaw Public Schools - Counts I (intentional tort) and II (gross negligence)

Defendants argue that governmental immunity protects the defendants from suit and that none of the statutory exceptions are applicable to the instant case.  (Dkt. 16 at 6-7.)  Plaintiff contends that she "is not alleging negligence of the school district as a public functionary, but rather that the higher ups of the school district were personally negligent by failing to protect the Plaintiff despite being made aware of previously alleged abuse [on the part of Carlo Robinson]." (Dkt. 18 at 2-3.)  I will assume that Plaintiff is alleging a claim against the Defendant Saginaw Public Schools, which is a "public functionary," and that she is alleging gross negligence rather than mere ordinary negligence as indicated in the caption to Count II.

Governmental immunity for agencies is provided for as follows:

Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.

MICH. COMP. LAWS § 691.1407(1).  The operation of a public school is a governmental function. *Stringwell v. Ann Arbor Public School District*, 686 N.W.2d 825, 826 (Mich. App. 2004).

The immunity conferred on governmental agencies is broad and the exceptions are narrowly drawn.  *Nawrocki v. Macomb Co. Road Comm'n,* 615 N.W.2d 702, 706, 463 Mich. 143, 149

---

[8]As stated earlier, I also suggest that any right violated was not clearly established since the conduct taken by Mr. Robinson falls so far short of the conduct alleged in *Ellis, supra,* or *Stoneking, supra*.

15

...

(2000). The five statutory exceptions are: (1) the "highway exception" (MICH. COMP. LAWS § 691.1402); (2) the "motor vehicle exception" (MICH. COMP. LAWS § 691.1405); (3) the "public building exception" (MICH. COMP. LAWS § 691.1406); (4) the "proprietary function exception" (MICH. COMP. LAWS § 691.1413); and (5) the "governmental hospital exception" (MICH. COMP. LAWS § 691.1407(4)). None of these exceptions are applicable in the instant case.[9]

Consequently, I suggest that Defendant Saginaw Public Schools is a governmental agency entitled to immunity from suit for the state law torts committed while engaged in a governmental function as alleged in Counts I and II of Plaintiff's Complaint. *See Pohutski v. City of Allen Park*, 465 Mich. 675, 685, 641 N.W.2d 219, 227 (2002); *Payton v. Detroit*, 211 Mich. App. 375, 393, 536 N.W.2d 233 (1995) (employer cannot be held liable for an employee's intentional torts).[10]

### 4.     **Defendant Hatton - Counts I (intentional tort) and II (gross negligence)**

Immunity of governmental employees under Michigan law is statutorily provided for as follows:

> Each . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . while acting on behalf of a governmental agency if all of the following are met:
>
> (a)     The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b)     The governmental agency is engaged in the exercise or discharge of a governmental function.

---

[9] Defendants also correctly note that Defendant Saginaw Public Schools has no vicarious liability for the actions of Mr. Robinson (pursuant to a *respondeat superior* theory). (Dkt. 16 at 7-8.) *See Gracey v. Wayne County Clerk*, 213 Mich. App. 412, 540 N.W.2d 710 (1995), *overruled on other grounds*, 454 Mich. 135, 560 N.W.2d 50 (1997).

[10] I further suggest that even if the merits of this claim were addressed, for the same reasons as indicated under the § 1983 analysis, Defendant Saginaw Public Schools would be entitled to summary judgment.

> (c)  The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS § 691.1407(2).  "'Gross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 1407(7)(a). Plaintiff's Complaint refers to "unlawful contact" and "assaulting and battering;" thus, it is presumed that the specific "intentional tort" averred is that of assault and battery. (Dkt. 1 ¶ 22.)

Plaintiff does not allege that Defendant Hatton herself committed the intentional tort but rather that Defendant Hatton "had been previously made aware of prior threats and assaultive behavior by Mr. Robinson" and that she had failed to adequately train or supervise Mr. Robinson which amounted to gross negligence. (Dkt. 1 ¶¶ 21, 26.) As indicated above, her testimony that she was unaware of any previous assaults by Mr. Robinson is uncontroverted. (Hatton Dep. at 16.) I suggest that it would defy logic to hold that her failure to act was grossly negligent when she had no information that would prompt her to act. Therefore, I suggest that for this reason and the reasons stated in analyzing the § 1983 claim, Defendant Hatton is entitled to immunity and that summary judgment in favor of Defendant Hatton is appropriate as to the intentional tort and gross negligence claims.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*,

932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.


|  |  s/ *Charles E Binder* |
|---|---|
|  | CHARLES E. BINDER |
| Dated: April 25, 2007 | United States Magistrate Judge |


### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Scott Mandel, and on J. Kim Welch by first class mail, and served on U.S. District Judge Ludington in the traditional manner.


| Date:  April 25, 2007 | By      s/Patricia T. Morris |
|---|---|
|  | Law Clerk to Magistrate Judge Binder |

18